FILED

2013 AUG 12 PM 3:56

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY ______ DEPUTY

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.* UNIVERSITY LOFT COMPANY<br>Plaintiff,<br>v.<br><br>UNIVERSITY FURNISHINGS, LP, and FREEDOM FURNITURE GROUP, INC.<br><br>Defendant | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. A13CV0678 SS<br><br>**FILED IN CAMERA AND UNDER SEAL**<br>Pursuant To 31 USC §3730(b) |

**PLAINTIFF'S ORIGINAL COMPLAINT**
**(JURY TRIAL DEMANDED)**

The United States of America *ex rel.* J Squared, Inc. d/b/a University Loft Company ("Relator"), files this Complaint against Defendants University Furnishings, LP ("UF") and Freedom Furniture Group, Inc. ("Freedom Furniture") (collectively "Defendants"). In support thereof, Relator respectfully would show the Court as follows:

## I.
## PARTIES

1. Relator is an Indiana Corporation having its principal place of business in Greenfield, Indiana.

2. Defendant University Furnishings, LP is a Texas limited partnership with its principal place of business in Dallas, Texas. Upon information and belief, the listed registered agent for University Furnishings, Daniel Beck, died in 2013, but service can be accomplished by serving an officer of University Furnishings.

3. Defendant Freedom Furniture Group, Inc. is a Texas Corporation with its principal place of business in Dallas, Texas. Defendant Freedom Furniture is the general partner of Defendant University Furnishings LP. Upon information and belief, the listed registered agent for University Furnishings, Daniel Beck, died in 2013, but service can be accomplished by serving an officer of University Furnishings.

## II.
## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over the claims alleged in this Complaint under 28 U.S.C. §§ 1331 (Federal question), 1345 (United States as plaintiff) and 31 U.S.C. § 3732(a) (False Claims Act).

4. This Court has personal jurisdiction over the Defendants pursuant to 31 U.S.C. § 3732(a) because the Defendants can be found, reside, and/or transacts business in this District. Title 31, United States Code, Section 3732(a) further provides for nationwide service of process.

5. Upon information and belief, this Complaint is not based on the facts underlying any pending related *qui tam* action, within the meaning of the False Claims Act's first-to-file rule, 31 U.S.C. § 3730(b)(5).

6. This action is not precluded by any provisions of the False Claims Act's jurisdiction bar, 31 U.S.C. § 3730(e) *et seq.*

a. Upon information and belief, this Complaint is not based upon allegations or transactions that are the subject of a civil suit or an administrative civil money penalty proceeding in which the United States is already a party. 31 U.S.C. §3730(e)(3).

b. Upon further information and belief, there has been no "public disclosure" of key facts alleged herein regarding Relator's discovery and investigation of the fraud.

Moreover, Relator is an "original source" of information as defined by 31 U.S.C. §3730(e)(4)(B) of the False Claims Act and provided a detailed description of the fraud before filing this action to the Commercial Targeting and Enforcement Office of International Trade - U.S. Customs and Border Protection in May 2011 and to the U.S. Department of Justice in July 2013.[1]

7. Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c), and 31 U.S.C. § 3732(a), because Defendants can be found in and transact business within this District.

## THE FEDERAL FALSE CLAIMS ACT

8. The False Claims Act (FCA), which was originally enacted in 1863, was substantially amended in 1986 by the False Claims Amendments Act, Pub.L. 99-562, 100 Stat. 3153 to enhance the Government's ability to recover losses as a result of fraud. Among other things, the amendments created incentives for individuals with knowledge of fraud on the United States to disclose the information without fear of reprisals or Government inaction, and to encourage the private bar to commit resources to prosecuting fraud on the Government's behalf. According to the Supreme Court, the FCA is intended to reach all types of fraud, without qualification, that might result in financial loss to the Government. The FCA, as amended, includes a reverse false claims provision that imposes liability on a party that, by false statement, seeks to conceal, avoid, or decrease a precise, preexisting obligation to pay the United States. 31 U.S.C. § 3729(a)(1)(G).

9. The FCA provides that any person who knowingly makes, uses, or causes to be made or used false records and statements to decrease its obligations to the Government is liable for a civil penalty ranging from $5,500 up to $11,000 (as of the filing date of this Complaint) for

---

[1] Plaintiff is filing the written disclosure provided to the U.S. Department of Justice contemporaneously herewith.

each such violation, plus three times the amount of the damages sustained by the Federal Government.

## THE APPLICATION OF THE FCA TO THE TARIFF ACT OF 1930

10. All goods imported into the United States are taxed according to the Harmonized Tariff Schedule of the United States ("HTS") (codified at 19 U.S.C. § 1202). The United States Customs and Border Protection division of the Department of Homeland Security ("CBP") is responsible for assessing and collecting these duties. CBP relies on importers to supply accurate information about imported merchandise, including the applicable HTS classification. The importer is required to declare under oath that, among other things, "all statements in the invoice or other documents filed with the entry, or in the entry itself, are true and correct." 19 U.S.C. § 1485(a)(3).

11. Under customs regulations, importers have an existing, non-contingent and nondiscretionary liability for customs duties. *See, e.g.,* 19 C.F.R. §§ 141.4, 159.2 (demanding entry and liquidation of imported merchandise); 19 U.S.C. § 1503 (assessment of duties on imports is generally based on the appraised value of the imported goods as determined on liquidation). Such liability arises immediately and automatically upon the importation of goods into the United States. 19 C.F.R. § 141.1(b)(1).[2] Accordingly, false statements or records made to avoid or decrease this obligation to pay are actionable under the False Claims Act's reverse false claims provision. 31 U.S.C. § 3729(a)(1)(G) (formerly 31 U.S.C. § 3729(a)(7)).

[2] In addition to paying estimated duties, taxes, and fees when products enter the country, importers also are generally required to provide a bond to help ensure that the government can recover additional duties, taxes, or fees that may be owed. *See* 19 C.F.R. §§ 113.62 and 142.4 for CBP bonding requirements. In general, the importer is required to obtain a bond equal to 10 percent of the amount the importer paid in duties, taxes, and fees over the preceding year (or $50,000, whichever is greater).

12. The FCA allows any person having information about false or fraudulent claims to bring an action as a relator for itself and the Government, and to share in any recovery. [3] The FCA requires that the original *qui tam* complaint be filed under seal for a minimum of 60 days (without service on the defendant during that time). Based on these provisions, Relator seeks through this action to recover on behalf of the United States all available damages, civil penalties, and other relief for the violations alleged herein.

13. Although the precise amount of the loss from Defendants' misconduct alleged in this action cannot presently be determined, Relator estimates that the damages and civil penalties that may be assessed against the Defendants under the facts alleged in this Complaint exceed $20 Million.

## III.
## FACTS

14. Relator has been a supplier of wooden bedroom furniture to the student housing industry for 25 years. It employs nearly two hundred American workers to manufacture and/or assemble its furniture at its factories in Indiana and Tennessee. When Relator does import certain wooden parts and other components from other countries, it strives to ensure that all applicable duties are paid. Relator and its American workers can compete head-to-head with any other company in the United States in this industry —as long as there is a level playing field and its competitors play by the rules.

[3] The FCA was amended again 2010 in connection with enactment of health care reform laws. *See the Patient Protection and Affordable Care Act*, P.L. 111-148, Title X, Subtitle A, § 10104(j)(2), 124 Stat. 901 (Mar. 23, 2010). Among other changes, the "public disclosure bar" and "original source" provisions in Section 3730(e)(4) of the FCA were amended to broaden the ability of relators to bring *qui tam* lawsuits under the Act.

15. Defendant University Furnishings, a direct competitor of Relator, is based outside of Dallas, Texas. Unlike Relator, Defendant does not have a factory in the United States and does not manufacture its own bedroom furniture. Rather, Defendant imports ready-to-assemble bedroom from China and essentially acts as a sales representative - distributor of this furniture. In fact, in most instances, when the imported ready-to-assemble furniture arrives in the United States, Defendant apparently arranges to have the furniture shipped directly from the docks to its customer's location. Upon information and belief, Defendant Freedom Furniture, as the general partner of Defendant University Furnishings, exercises control over Defendant University Furnishings.

16. Relator and Defendant UF often bid for the same contracts in supplying furniture for student housing. Relator's supplier relationships, manufacturing techniques and its internal pricing models have been developed over many years and comprise the primary reasons why Relator is often the successful bidder on projects. In recent years, however, Relator has lost multiple contracts that it traditionally has won at off-campus housing sites in and around certain universities in the United States. These contracts were awarded to Defendant UF. According to representatives of these purchasers, Defendant UF has been able to significantly underbid Relator. As a result of being underbid by Defendant UF, Relator has lost key relationships with customers and lost millions of dollars in revenue.

17. Based on Relator's experience in the industry and its confidential internal pricing models, Relator came to the conclusion in 2011 that there were only two plausible explanations for how Defendant UF had begun consistently underbidding Relator relating to the lost contracts; (a) Defendant UF was undercutting Relator by agreeing to provide the bedroom furniture for student housing (or components thereof) at "below cost," and was losing money on the bids, or

(b) Defendant's costs for purchasing and importing the bedroom furniture from China was substantially below the costs predicted by Relator's internal pricing models and published costs.

18. One of the many variables that are taken into account by Relator's internal pricing models is the import duty that is imposed on various items of furniture. For example, wooden chests of drawers typically make up about 37% of the cost of equipping a student housing bedroom. Thus, a variation on the import duty paid on wooden chests of drawers significantly impacts the estimated cost and pricing calculations involved in a bid proposal.

19. The United States has established laws to remedy the unfair trade practices of other countries and foreign companies that cause injury to domestic industries. For example, U.S. laws authorize the imposition of AD duties on imports that were "dumped" (i.e., sold at less than normal value) and CV duties on imports subsidized by foreign governments.

20. One such example of AD duties is the imposition of a high tariff rate on certain wooden bedroom furniture ("WBF") imported from the People's Republic of China. See Notice of Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order: Wooden Bedroom Furniture from the People's Republic of China, 70 FR 329 (January 4, 2005). The Anti-Dumping Order was renewed in 2010. See Case No. A-570-890 Wooden Bedroom Furniture From the People's Republic of China: Final Results of Expedited Sunset Review of Antidumping Duty Order ("ADD Case"). A copy of the Antidumping duty order entered in the ADD Case ("ADD Order") can be found at 75 Fed. Reg. 19364 *et seq.*

21. The ADD Order states, in relevant part:

> The product covered by the order is WBF. WBF is generally, but not exclusively, designed, manufactured, and offered for sale in coordinated groups, or bedrooms, in which all of the individual pieces are of approximately the same style and approximately the same material and/or finish. The subject merchandise is made substantially of wood products, including both solid wood and also engineered wood products made from wood particles, fibers, or other wooden materials such

> as plywood, strand board, particle board, and fiberboard, with or without wood veneers, wood overlays, or laminates, with or without non-wood components or trim such as metal, marble, leather, glass, plastic, or other resins, and whether or not assembled, completed, or finished.
> The subject merchandise **includes** the following items:
> ...
>
> > (5) chests-on-chests,' highboys,' lowboys,' **chests of drawers,'** chests,' door chests, chiffoniers,' hutches," and armoires;" ...; and (7) other bedroom furniture consistent with the above"

22. The ADD Order specifically defines "chest-on-chests, highboys, lowboys, chest of drawers, chests, door chests, chiffoniers, hutches, and armoires." The definitions of a chest-on-chest, a highboy and a lowboy all include the phrase "chest of drawers." A "chest of drawers" is defined in the ADD order as a "case containing drawers for holding cloths." Thus, the common element in each of these definitions is that the article of furniture has drawers for holding or storing clothes.

23. In summary, if a piece of furniture has drawers that are of the size typically used to hold or store clothes, the Department of Commerce (DOC) will determine that the item is within the scope of the ADD Order and is subject to antidumping duties.[4] Under the ADD Order, the antidumping duty cash deposit rate on WBF for Chinese exporters that have not been found to be entitled to a separate rate is currently 216.01%.

24. On the other hand, the ADD Order also specifically excludes certain items from the AD Duty. For example, certain types of office furniture, such as filing cabinets, are not subject to the AD Duty of 216.01%. Rather, this furniture is subject to a much lower duty.

25. In or around April 2011, James Jannetides, Relator's president, attended a trade show in Quan jo China. Mr. Jannetides noticed that a display for one of the manufacturers had

---

[4] The written description of the scope of the ADD order is dispositive, not the HTS classification. HTS classifications are listed in the scope of ADD orders for convenience only, and do not determine whether a product falls under the scope of an ADD order.

several pieces of bedroom furniture that appeared to be "knock offs" of the University Loft furniture.[5] Mr. Jannetides questioned the sales representative for the manufacturer about the prices for the furniture, and asked how purchasing and importing the furniture into the United States was even economically feasible given the steep anti-dumping duties on Chinese bedroom furniture. The sales manager confided that the manufacturer could help the customer avoid the anti-dumping duties by not referring to the furniture in the paperwork as "bedroom furniture," but rather calling it "file cabinets" or something similar; or by having the paperwork show that the furniture was being supplied by a different company that had been approved for payment of a lower duty.

26. Based on the information learned by Relator's president in this private conversation and based on Relator's experience and its internal pricing data, manufacturing techniques and pricing models, Relator concluded Defendant UF was able to significantly underbid Relator for contracts, because it imports wooden bedroom furniture manufactured in China and illegally evades payment of the applicable AD Duty by falsely describing and classifying the imported merchandise.[6] By letter dated May 19, 2011, Relator, through its counsel, notified the CPB of its suspicions (the "CBP Letter").

27. To test its conclusions about Defendant UF's fraudulent practices, Relator analyzed data in two bills of lading involving Defendant's importation of goods. A shipment exported by Top

---

[5] Based on his recollection which was refreshed by the events described below that transpired in 2013, Mr. Jannetides believes that the furniture items he saw were the same make and model as items offered by University Furnishings and that the manufacturer was Zhejiang Jinhua Friendship Industry CO., LTD.

[6] Based on its review of the Federal Register, Relator does not believe the suspected manufacturer Zhejiang Jinhua Friendship Industry CO., LTD negotiated a different rate than the AD Duty imposed under the ADD Order.

Craft International Limited,[7] and consigned to Defendant UF, arrived at the Port of Los Angeles, CA (Port 2704) on April 8, 2011, under bill of lading number EGLV143181673525 and was transported in bond to Port of Louisville, Kentucky (Port 4115). The relevant merchandise in the shipment was described as "2 Drawer Lateral File."

28. Upon information and belief, Defendant UF did not sell filing cabinets or "lateral files" in 2011. Relator believes that the merchandise described by Defendant UF as "2 drawer lateral files" were actually 2-drawer wooden bedroom chests subject to AD Duties of 216% under the ADD Order. This conclusion is further bolstered by the fact that Item Number "MS27-bl-wc-wilsonart" is listed twice under the Marks and Numbers section of the manifest information. Upon information and belief, this item number corresponds to the SKU number "MS27-BL-WC" that Defendant UF assigned to the furniture item in its "Infinium Collection" that is described as a "2 drawer bedroom chest."

29. Similarly, the manifest information for a second shipment of merchandise imported by Defendant UF, which arrived on February 13, 2011 under bill of lading number HRZDNB2143981A, identifies the merchandise as a "4 drawer lateral [sic] file" and "2 drawer lateral F." Relator believes these items actually were bedroom chests subject to the AD Duty under the ADD Order, and Defendant UF falsely described these items to evade the applicable AD Duty.

30. In addition to providing false descriptions of the bedroom chests, Relator believes that Defendant UF has intentionally misclassified these items to evade the applicable AD Duty.

[7] Top Craft International Limited aka Top Craft Company appears to be a wholly owned subsidiary of Import Merchandising Concepts (IMC), a U.S. based company located at 15565 Wright Brothers Drive, Addison, Texas 75001. University Loft suspects that there may be a relationship between IMC and University Furnishings. For example, in 2009 and 2010, IMC is shown as the consignee of "lateral files" from Top Craft on bills of lading. Beginning in 2011, the activity by IMC apparently stopped and University Furnishings is shown as the consignee of "lateral files."

Wooden bedroom chests of drawers are properly classified under HTS subheading 9403.50.90, which provides for "Other furniture and parts thereof: Wooden furniture of a kind used in the bedroom." Relator believes that Defendant UF has intentionally misclassified the chests of drawers under HTS subheading 9403.60.80 or under some other furniture classification to avoid scrutiny by the CPB. Relator believes that Defendant may have also intentionally mislabeled and misclassified other items of furniture, such as headboards, to evade AD duties.

31. As far as Relator knows, CBP did not take any action to stop Defendant's activity in response to the CBP letter, and Defendant UF continues to import bedroom furniture from China and continues to underbid Relator. Based on this continued activity by Defendant UF, Relator decided in early 2013 to further investigate whether Defendant was evading duties on Wooden Bedroom Furniture, by posing as a potential buyer that was interested in importing Wooden Bedroom Furniture from China.

32. In or around April 2013, Relator confirmed that Zhejiang Jinhua Friendship Industry CO., LTD ("Friendship Industry"), which is located in mainland China, manufactures bedroom furniture for University Furnishings. Friendship Industry is located at the Kangji Street, Industrial Functional Park, Jindong New Urban Area, Jinhua, Zhejiang, China.

33. University Loft representatives had discussions by email and in person in April 2013 with Echo Lee, a representative of Friendship Industry about selling furniture to University Loft. During these discussions, Relator's representatives directly questioned Echo Lee about how Friendship Industry could help University Loft in connection with the high AD Duty on Wooden Bedroom Furniture. Echo Lee confided to these representatives that one technique it had used to help importers avoid the AD Duty was to classify bedroom chests as "file cabinets." Echo Lee also confided to Relator's representatives that Friendship Industry had begun using

another scheme to avoid the AD Duty. As explained in an email from Echo Lee dated April 1, 2013: "Refer to anti-dumping, We also have a solution that make export through company who win the Anti-dumping clain (sic) in USA but we need to pay some charges for it. this is the safe way we used now." Relator believes the "safe way" suggested by Echo Lee involves creating false documents to disguise the true origin of the furniture and mislead customs officials into believing that the furniture is not subject to the AD Duty.

34. Under the guise of continued interest in using Friendship Industry as a supplier, Relator's representative arranged to tour Friendship Industry's factory in China on or about April 6, 2013. During the tour, Friendship Industry confirmed that University Furnishings was one of its customers and provided business of over $3.5 Million annually. Relator's representative took photographs of various aspects of the manufacturing and assembly process in the factory and saw "knock-off" wooden chests of drawers, as well as wardrobes, beds and other bedroom furniture being packaged for importation into the United States.

35. Relator attempted to gather more information from Friendship Industry about the tactics it used to avoid the Anti-dumping duties. However, Friendship Industry expressed concern about damaging its relationship with University Furnishings and refused to provide additional information.

36. Based on the new information learned by University Loft through its overseas representatives, University Loft reviewed additional bills of lading regarding bedroom furniture imported by IMC and University Furnishings for the time period 2009- May 2013. The 2013 Bills of Lading reviewed by Relator show that University Furnishing has begun representing that it imports bedroom chests from a company called Ah Furniture Manufacture Co., Ltd. in Vietnam. It also claims that the bedroom chests are made in Vietnam. Based on the email from

Echo Lee to Allen Guo referenced above, and based on earlier statements in 2011 made to Mr. Jannetides, University Loft believes that the "safe way" University Furnishings and Friendship Industry are now using to evade Anti-Dumping duties is to falsely designate the origin of the furniture as Vietnam and falsely claim that Ah Furniture Manufacture Co., Ltd. rather than Friendship Industry is the provider of this furniture.

37. Relator believes that Defendant UF, with the full knowledge and participation of Defendant Freedom Furniture, has used the scheme described above on multiple occasions from 2009 through the present. Based on the information presently known to University Loft, the estimated custom duties that University Furnishings should have paid in 2011-2013 regarding chests of drawers that it falsely described as "lateral files" "stackable chests" and "chests", or that it claims were made in Vietnam is over $7 Million. In addition, if the "lateral files" for which IMC is shown as consignee in 2009-2010 are subject to AD Duties, the applicable AD Duties would have been over $1.4 Million regarding these imports. These amounts does not include duties that University Loft may have illegally avoided by falsely describing other furniture in the past or regarding furniture shipped after May 2013.

38. In July 2013, prior to filing this Complaint, University Loft presented its 2011 findings and the information learned in its 2013 investigation to the Department of Justice and to the CBP.

**COUNT I**
**Violation of the False Claims Act - 31 U.S.C. § 3729(a)(1)(G)**

39. The preceding paragraphs are re-alleged and incorporated by reference as if fully set forth herein.

40. By virtue of the acts described above, Defendant UF violated the reverse false claims provision of the FCA by evading applicable import duties on furniture, because it knowingly made, used, or caused to be made or used, a false record or statement material to an

obligation to pay or transmit money or property to the Government, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the Government. 31 U.S.C. § 3729(a)(1)(G) (formerly 31 U.S.C. § 3729(a)(7)).

41. By reason of Defendant's actions, the United States has been damaged, and continues to be damaged, in a substantial amount.

**COUNT II**
**Conspiracy to Violate the False Claims Act - 31 U.S.C. § 3729(a)(1)(C)**

42. The preceding paragraphs are re-alleged and incorporated by reference as if fully set forth herein.

43. Defendants acted in concert with each other and with other conspirators to violate the False Claims Act by evading applicable import duties on furniture, because they knowingly made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the Government.

44. Defendants committed the overt acts described above in furtherance of the conspiracy, including but not limited to, falsely describing and classifying Chinese Wooden Bedroom Furniture or by falsely stating a false country-of-origin on required customs forms, concealing and avoiding their obligation to pay antidumping duties. Defendants' conspiracy violates 31 U.S.C. § 3729(a)(1)(C), by which Defendants obtained entry and release of their WBF into the United. States without paying amounts due to the United States.

45. By reason of Defendants' conspiracy, the United States has been damaged, and continues to be damaged, in a substantial amount.

46. Relator hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff United States *ex rel.* University Loft Company respectfully requests that judgment be entered against Defendants, ordering that:

a. Defendants pay not less than $5,500 and not more than $11,000 for each violation of 31 U.S.C. § 3729 plus three times the amount of damages the United States has sustained because of Defendants' actions;

b. Relator be awarded the maximum amount allowed pursuant to 31 U.S.C. § 3730(d);

c. Relator be awarded all costs of this action, including attorneys' fees and costs pursuant to 31 U.S.C. § 3730(d); and

d. The United States and Relator recover such other relief as the Court deems just and proper.

Respectfully submitted,

GRAVES, DOUGHERTY, HEARON & MOODY, P.C.
401 Congress Ave., Suite 2200, Austin, TX 78701
P.O. Box 98, Austin TX 78767-0098
(512) 480-5653 Telephone
(512) 480-5853 Telecopy

By: ______________________
Steven D. Smit
State Bar No. 18527500
ssmit@gdhm.com
Matthew B. Baumgartner
State Bar No. 24062605
mbaumgartner@gdhm.com

ATTORNEYS FOR RELATOR UNIVERSITY LOFT COMPANY