# DISCLOSURE STATEMENT

UNITED STATES OF AMERICA, ex rel.,
UNIVERSITY LOFT COMPANY

Plaintiff

v.

UNIVERSITY FURNISHINGS, LP,
and FREEDOM FURNITURE GROUP, INC.

Defendants

Provided to the Attorney General of the United States and
the United States Attorney for the Western District of Texas

Prepared by:
Steven D. Smit and
Matthew B. Baumgartner
*of* GRAVES, DOUGHERTY, HEARON & MOODY,
AUSTIN, TEXAS

# I. Introduction

The United States is sustaining millions in damages from University Furnishings, LP's long-running and illegal scheme to avoid Anti-Dumping Duties on imports of Wooden Bedroom Furniture from China. As described below, relator J Squared, Inc. d/b/a University Loft Company ("University Loft") believes that from at least 2011 and continuing through the present, University Furnishings and its general partner Freedom Furniture Group, Inc. (together "Defendants") have been violating the reverse false claims provision of the False Claims Act by knowingly evading or conspiring to evade their obligations to pay applicable import duties on Chinese-made wooden bedroom furniture (WBF). University Loft has been able to determine these violations are occurring in part through its own investigation of Defendants' Chinese suppliers. University Loft's investigation makes clear that Defendants and their Chinese suppliers have been mislabeling Chinese-made WBF as other types of furniture not subject to duty, and have been falsely naming Vietnam as the country of origin on shipments of WBF.

As required by 31 U.S.C. § 3730(b)(2), *qui tam* plaintiff University Loft hereby submits this Disclosure Statement containing substantially all the evidence and information it possesses relating to Defendants' illegal scheme. Based on information presently known by University Loft, the damages and penalties at issue are over $10 Million.

University Loft respectfully urges the Government to act quickly to investigate this matter, because it believes several shipments of bedroom furniture being imported by Defendants are currently in transit and will soon arrive at ports in the United States. If these shipments are inspected by Customs, University Loft believes the Government will be able to quickly establish that Defendants have been defrauding the Government, by either misclassifying the furniture or by falsely designating the origin of the furniture.

# II. The Parties

A. *Qui tam* plaintiff

University Loft has been a supplier and manufacturer of wooden bedroom furniture for the student housing industry for 25 years. It employs nearly two hundred American workers to manufacture and/or assemble furniture at its factories in Indiana and Tennessee. When University Loft does import certain wooden parts and other components from other countries, it strives to ensure that all applicable duties are paid. University Loft and its American workers can compete head-to-head with any other company in the United States in this industry—as long as there is a level playing field and its competitors play by the rules. A brochure about University Loft and its history is attached as **Exhibit A**. Additional information about University Loft can be found on its website http://www.universityloft.com.

**B.     Defendants**

Defendant University Furnishings, LP is a Texas Limited Partnership based outside of Dallas, Texas. Unlike University Loft, Defendant University Furnishings does not have a factory in the United States and does not manufacture its own bedroom furniture. Rather, Defendant imports millions of dollars of ready-to-assemble "knock-off" bedroom furniture from China and essentially acts as a seller-distributor of this furniture. In fact, in most instances, when the imported ready-to-assemble furniture arrives in the United States, University Furnishings apparently arranges to have the furniture shipped directly from the docks to its customer's location. University Loft believes that Freedom Furniture Group, Inc. as the general partner of Defendant University Furnishings, exercises control over Defendant University Furnishings. University Loft believes that until recently, the principal "control" person for both Defendants (and for several possibly related companies) was Daniel Louis Beck. Mr. Beck died in March 2013. According to unconfirmed reports, Mr. Beck committed suicide. University Loft believes that the current "control person" for Defendants is Paul Dougan. Information about University Furnishings can be found on its website at http://www.universityfurnishings.net. Information about Freedom Furniture can be found on its website at http://www.freedomfurniture.com.

### III. Background

**A. The Law**

### THE FEDERAL FALSE CLAIMS ACT

The False Claims Act (FCA), which was originally enacted in 1863, was substantially amended in 1986 by the False Claims Amendments Act, Pub.L. 99-562, 100 Stat. 3153 to enhance the Government's ability to recover losses as a result of fraud. Among other things, the amendments created incentives for individuals with knowledge of fraud on the United States to disclose the information without fear of reprisals or Government inaction, and to encourage the private bar to commit resources to prosecuting fraud on the Government's behalf. According to the Supreme Court, the FCA is intended to reach all types of fraud, without qualification, that might result in financial loss to the Government. The FCA, as amended, includes a reverse false claims provision that imposes liability on a party that, by false statement, seeks to conceal, avoid, or decrease a precise, preexisting obligation to pay the United States. 31 U.S.C. § 3729(a)(1)(G).

The FCA provides that any person who knowingly makes, uses, or causes to be made or used false records and statements to decrease its obligations to the Government is liable for a civil penalty ranging from $5,500 up to $11,000 (as of the filing date of this Complaint) for each such violation, plus three times the amount of the damages sustained by the Federal Government.

### THE APPLICATION OF THE FCA TO THE TARIFF ACT OF 1930

All goods imported into the United States are taxed according to the Harmonized Tariff Schedule of the United States (HTS) (codified at 19 U.S.C. § 1202). The United States Customs and Border Protection division of the Department of Homeland Security (CBP) is responsible for

assessing and collecting these duties. CBP relies on importers to supply accurate information about imported merchandise, including the applicable HTS classification. The importer is required to declare under oath that, among other things, "all statements in the invoice or other documents filed with the entry, or in the entry itself, are true and correct." 19 U.S.C. § 1485(a)(3).

Under customs regulations, importers have an existing, non-contingent and nondiscretionary liability for customs duties. *See, e.g.,* 19 C.F.R. §§ 141.4, 159.2 (demanding entry and liquidation of imported merchandise); 19 U.S.C. § 1503 (assessment of duties on imports is generally based on the appraised value of the imported goods as determined on liquidation). Such liability arises immediately and automatically upon the importation of goods into the United States. 19 C.F.R. § 141.1(b)(1).[1]

Accordingly, false statements or records made to avoid or decrease this obligation to pay are actionable under the False Claims Act's reverse false claims provision. 31 U.S.C. § 3729(a)(1)(G) (formerly 31 U.S.C. § 3729(a)(7)). This includes avoidance of customs duties as shown by the Department of Justice's recent $45 Million settlement in a *qui tam* lawsuit brought under the reverse false claims provision of the FCA by the president of Nation Ford Chemical Co., against a competitor Toyo Ink for illegally evading custom duties regarding a particular pigment of ink. A copy of a press release from the Department of Justice regarding the settlement with Toyo is attached as **Exhibit B**.

## THE ANTI-DUMPING DUTIES ON WOODEN BEDROOM FURNITURE

The United States has established laws to remedy the unfair trade practices of other countries and foreign companies that cause injury to domestic industries. For example, U.S. laws authorize the imposition of AD duties on imports that were "dumped" (*i.e.*, sold at less than normal value) and CV duties on imports subsidized by foreign governments.

One such example of AD duties is the imposition of a high tariff rate on certain wooden bedroom furniture (WBF) imported from the People's Republic of China. Notice of Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order: Wooden Bedroom Furniture from the People's Republic of China, 70 FR 329 (January 4, 2005). The Anti-Dumping Order was renewed in 2010. *See* Case No. A-570-890 Wooden Bedroom Furniture From the People's Republic of China: Final Results of Expedited Sunset Review of Antidumping Duty Order (ADD Case). A copy of the Antidumping duty order entered in the ADD Case (ADD Order) can be found at 75 Fed. Reg. 19364 *et seq.*

---

[1] In addition to paying estimated duties, taxes, and fees when products enter the country, importers also are generally required to provide a bond to help ensure that the government can recover additional duties, taxes, or fees that may be owed. *See* 19 C.F.R. §§ 113.62 and 142.4 for CBP bonding requirements. In general, the importer is required to obtain a bond equal to 10 percent of the amount the importer paid in duties, taxes, and fees over the preceding year (or $50,000, whichever is greater).

The ADD Order states, in relevant part:

> The product covered by the order is WBF. WBF is generally, but not exclusively, designed, manufactured, and offered for sale in coordinated groups, or bedrooms, in which all of the individual pieces are of approximately the same style and approximately the same material and/or finish. The subject merchandise is made substantially of wood products, including both solid wood and also engineered wood products made from wood particles, fibers, or other wooden materials such as plywood, strand board, particle board, and fiberboard, with or without wood veneers, wood overlays, or laminates, with or without non-wood components or trim such as metal, marble, leather, glass, plastic, or other resins, and whether or not assembled, completed, or finished.
>
> The subject merchandise **includes** the following items:
> …
>
> > (5) chests-on-chests, highboys, lowboys, **chests of drawers,** chests, door chests, chiffoniers, hutches, and armoires; …; and (7) other bedroom furniture consistent with the above"

The ADD Order specifically defines "chest-on-chests," "highboys," "lowboys," "chest of drawers," "chests," "door chests," "chiffoniers," "hutches," and "armoires." The definitions of a chest-on-chest, a highboy and a lowboy all include the phrase "chest of drawers." A "chest of drawers" is defined in the ADD order as a "case containing drawers for storing clothing." Thus, the common element in each of these definitions is that the article of furniture has drawers for holding or storing clothes.

In summary, if a piece of furniture has drawers that are of the size typically used to hold or store clothes, the Department of Commerce (DOC) will determine that the item is within the scope of the ADD Order and is subject to antidumping duties.[2] Under the ADD Order, the antidumping duty cash deposit rate on WBF for Chinese exporters that have not been found to be entitled to a separate rate is currently 216.01%. On the other hand, the ADD Order also specifically excludes certain items from the AD Duty. For example, certain types of office furniture, such as filing cabinets, are not subject to the AD Duty of 216.01%.

## B. The Facts

### 1. University Loft's Initial Discovery of Defendants' Illegal Scheme

University Loft and Defendant UF often bid for the same contracts in supplying furniture for student housing. University Loft's supplier relationships, manufacturing techniques and its internal pricing models have been developed over many years and comprise

---

[2] The written description of the scope of the ADD order – not the HTS classification -- is dispositive. HTS classifications are listed in the scope of ADD orders for convenience only, and do not determine whether a product falls under the scope of an ADD order.

the primary reasons why University Loft is often the successful bidder on projects. In recent years, however, University Loft has lost multiple contracts that it traditionally has won at off-campus housing sites in and around certain universities in the United States. These contracts were awarded to Defendant UF. According to representatives of these purchasers, Defendant UF has been able to significantly underbid University Loft.

Based on University Loft's experience in the industry and its internal pricing models, University Loft came to the conclusion in 2011 that there were only two plausible explanations for how Defendant UF had begun consistently underbidding University Loft relating to the lost contracts; (a) Defendant UF was undercutting University Loft by agreeing to provide the bedroom furniture for student housing (or components thereof) at "below cost," and was losing money on the bids, or (b) Defendant's costs for purchasing and importing the bedroom furniture from China was substantially below the costs predicted by University Loft's internal pricing models.

One of the many variables that is taken into account by University Loft's internal pricing models is the import duty that is imposed on various items of furniture. For example, wooden chests of drawers typically make up about 37% of the cost of equipping a student housing bedroom. Thus, a variation on the import duty paid on wooden chests of drawers significantly impacts the estimated cost and pricing calculations involved in a bid proposal.

In April 2011, University Loft founder and president James Jannetides attended a trade show in Quan jo China. Mr. Jannetides noticed that a display for one of the manufacturers had several pieces of bedroom furniture that appeared to be "knock offs" of the University Loft furniture.[3] Posing as an interested potential customer, Mr. Jannetides questioned the sales representative for the manufacturer about the prices for the furniture, and asked how purchasing and importing the furniture into the United States was even economically feasible given the steep anti-dumping duties on Chinese bedroom furniture. The sales manager confided to Mr. Jannetides that the manufacturer could help the customer avoid the anti-dumping duties by not referring to the furniture in the paperwork as "bedroom furniture," but rather calling it "file cabinets" or something similar; or by having the paperwork show that the furniture was being supplied by a different company that had been approved for payment of a lower duty.

Based on this private conversation, University Loft conducted a preliminary investigation in 2011 to determine whether University Furnishings was using either scheme to illegally avoid the Anti-Dumping Duties on the knock-off furniture. After reviewing selected bills of lading regarding University Furnishing's imports into the United States in 2011, University Loft believed it had sufficient evidence to notify the Government about its suspicions that University Furnishing had been illegally evading payment of the applicable AD Duty by falsely describing and classifying the imported wooden chests of drawers.

---

[3] Based on his recollection which was refreshed by the events described below that transpired in 2013, Mr. Jannetides believes that the furniture items he saw were the same make and model as items offered by University Furnishings and that the manufacturer was Zhejiang Jinhua Friendship Industry CO., LTD.

PRIVILEGED AND CONFIDENTIAL

Page 6 of 10

## 2. University Loft's Notification in 2011 to U.S. Customs

By letter dated May 19, 2011, University Loft, through its counsel, notified the CPB of its suspicions (the "CBP Letter"). [4] A copy of this letter and its exhibits is attached as **Exhibit C**. As outlined in the CBP letter, University Loft analyzed data regarding Defendant's importation of goods in two bills of lading.

According to manifest information obtained by Relator, which is attached as Exhibit 1 to the CPB Letter, a shipment exported by Top Craft International Limited,[5] and consigned to Defendant UF, arrived at the Port of Los Angeles, CA (Port 2704) on April 8, 2011, under bill of lading number EGLV143181673525 and was transported in bond to Port of Louisville, Kentucky (Port 4115). The relevant merchandise in the shipment was described as "2 Drawer Lateral File."

Based on University Loft's knowledge of the industry, Defendant UF did not sell filing cabinets or "lateral files" in 2011. University Loft believes that the merchandise described by Defendant UF as "2 drawer lateral files" were actually 2-drawer wooden bedroom chests subject to AD Duties of 216% under the ADD Order. This conclusion is further bolstered by the fact that Item Number "MS27-bl-wc-wilsonart" is listed twice under the Marks and Numbers section of the manifest information. This item number corresponds to the SKU number "MS27-BL-WC" that Defendant UF assigned to the furniture item in its "Infinium Collection" that it describes as a "2 drawer bedroom chest" (see Exhibit 2 to CPB Letter).

Similarly, the manifest information for a second shipment of merchandise imported by Defendant UF, which arrived on February 13, 2011 under bill of lading number HRZDNB2143981A, identifies the merchandise as a "4 drawer lateral [sic] file" and "2 drawer lateral F" (*see* Exhibit 3 to CPB Letter ). University Loft believes these items actually were bedroom chests subject to the AD Duty under the ADD Order, and Defendant UF falsely described these items to evade the applicable AD Duty.[6]

---

[4] The CBP sent a form reply email to University Loft's counsel and assigned case number e11519632394659 to University Loft's allegations. *See* **Exhibit C** (last page). However, to University Loft's knowledge, no further action has been taken by the CBP.

[5] Top Craft International Limited aka Top Craft Company apparently is a wholly-owned subsidiary of Import Merchandising Concepts (IMC), a U.S. based company located at 15565 Wright Brothers Drive, Addison, Texas 75001. Information about IMC is attached as **Exhibit D.** University Loft suspects that there may be a relationship between IMC and University Furnishings. For example, Bills of Lading in which IMC is shown as the consignee of "lateral files" from Top Craft are attached as **Exhibit J-1** and are summarized in the spreadsheet at **Exhibit K**. As can be seen from these documents, IMC is shown as consignee in 2009-2010 for "lateral files" purportedly from Hong Kong. Beginning in 2011, the activity by IMC apparently stopped and University Furnishings is shown as the consignee of "lateral files." Based on its review of the Federal Register, University Loft does not believe that Top Craft Company or the suspected manufacturer Zhejiang Jinhua Friendship Industry CO., LTD negotiated a different rate than the AD Duty imposed under the ADD Order.

[6] University Loft believes that other items imported by Defendant UF, such as headboards and nightstands, might also have been mislabeled on these bills of lading.

PRIVILEGED AND CONFIDENTIAL

In addition to providing false descriptions of the bedroom chests, University Loft believes that Defendant UF intentionally misclassified these items to evade the applicable AD Duty. Wooden bedroom chests of drawers are properly classified under HTS subheading 9403.50.90, which provides for "Other furniture and parts thereof: Wooden furniture of a kind used in the bedroom." University Loft believes that Defendant UF has intentionally misclassified the chests of drawers under HTS subheading 9403.60.80 or under some other furniture classification to avoid scrutiny by the CPB.

3. **University Loft's Further Investigation in 2013**

Despite the notification to U.S. Customs of Defendant UF's activity in 2011, Defendant UF continues to import bedroom furniture and continues to underbid University Loft. Based on this continued activity by Defendant UF, University Loft decided in early 2013 to further investigate whether Defendant was continuing to evade duties on Wooden Bedroom Furniture, by posing as a potential buyer that was interested in importing Wooden Bedroom Furniture from China.

In or around April 2013, University Loft confirmed that Zhejiang Jinhua Friendship Industry CO., LTD ("Friendship Industry") manufactures bedroom furniture for University Furnishings. Friendship Industry is located in mainland China, at Kangji Street, Industrial Functional Park, Jindong New Urban Area, Jinhua, Zhejiang, China. Information about Friendship Industry from its website is attached as **Exhibit E**.

Allen Guo, who is the Source and Product Development Executive for University Loft in China and Doreen Low (another representative of University Loft in Malaysia) had discussions by email and in person in April 2013 with Echo Lee, a representative of Friendship Industry about selling furniture to University Loft. During these discussions, Allen Guo and Ms. Low directly questioned Echo Lee about how Friendship Industry could help University Loft in connection with the high AD Duty on Wooden Bedroom Furniture. Echo Lee confided to these representatives that one technique it had used to help importers avoid the AD Duty was to classify bedroom chests as "file cabinets." Echo Lee also confided to Mr. Guo and Ms. Low that Friendship Industry had begun using another scheme to avoid the AD Duty. As explained in an email from Echo Lee dated April 1, 2013:

> "Refer to anti-dumping, We also have a solution that make export through company who win the Anti-dumping clain [sic] in USA but we need to pay some charges for it. this is the safe way we used now."

The email thread between Echo Lee and the representatives of University Loft about these topics is attached as **Exhibit F**. It is clear that the "safe way" suggested by Echo Lee involves creating false documents to disguise the true origin and/or nature of the furniture and to mislead customs officials to unlawfully avoid the AD Duty. It is simply not possible to lawfully avoid the anti-dumping duties on Chinese-made WBF.

Continuing its investigation under the guise of continued interest in using Friendship Industry as a supplier, Allen Guo arranged to tour Friendship Industry's factory in China on or about April 6, 2013. During the tour, Friendship Industry confirmed that University Furnishings was one of its customers and provided business of over $3.5 Million annually. Mr. Guo took photographs of various aspects of the manufacturing and assembly process in the factory and saw "knock-off" wooden chests of drawers, as well as wardrobes, beds and other bedroom furniture being packaged for importation into the United States. A copy of the photos taken by Mr. Guo are attached as **Exhibit G**. University Loft attempted to gather more information from Friendship Industry about the tactics it used to avoid the Anti-dumping duties. However, Friendship Industry expressed concern about damaging its relationship with University Furnishings and refused to provide additional information.

Based on the new information learned by University Loft through its overseas representatives, University Loft reviewed additional bills of lading regarding bedroom furniture imported by University Furnishings for the time period January 2011 - May 2013.[7] The 2011 Bills of Lading are attached as **Exhibit H**. The 2012 Bills of Lading are attached as **Exhibit I**. The 2013 Bills of Lading are attached as **Exhibit J**.[8] The Bills of Lading reflecting IMC as the consignee in 2009-2010 are attached as **Exhibit J-1**.

The 2011 and 2012 Bills of Lading (as well as the IMC Bills of Lading in **Exhibit J-1**) show numerous items being imported under labels such as "lateral file", "stackable chests", lateral file headboard (etc.). University Loft believes that all of these items were bedroom chests of drawers that are subject to AD Duties.[9] Beginning in 2012 and continuing into 2013, the Bills of Lading show that University Loft switched tactics and is representing that it imports bedroom chests from a company called Ah Furniture Manufacture Co., Ltd. in Vietnam. It also claims that the bedroom chests are made in Vietnam. Based on the 2013 investigation by University Loft referenced above, and based on earlier statements in 2011 made to Mr. Jannetides, University Loft believes that the supposed "safe way" that University Loft is now using to evade Anti-Dumping duties is to falsely designate the origin of the furniture as Vietnam.

### IV. Estimated Damages and Penalties

Based on the information presently known to University Loft, the estimated custom duties that University Furnishings should have paid in 2011 through May 2013 regarding chests of drawers that it described under labels such as "lateral files," "stackable chests" and "chests",

---

[7] University Loft does not know if the attached bills of lading represent all of the shipments of bedroom furniture imported by University Furnishings from 2011 through May 2013. Similarly, it does not know if the bills of lading in **Exhibit J-1** represent all of the suspicious IMC shipments.

[8] University Loft believes that one or more shipments are still in transit to the United States, but it has not been able to gather information regarding these shipments.

[9] Headboards and similar items of bedroom furniture from China are also generally subject to AD Duties. University Loft believes that Defendant University Furniture may have characterized some of these items as "bed frames" to avoid AD Duties.

or that it claims were made in Vietnam is over $7 Million.[10] See **Exhibit K.** In addition, if the furniture described in the IMC Bills of Lading (**Exhibit J-1**) are subject to AD Duties, the applicable AD Duties would have been over $1.4 Million. These amounts do not include duties that University Furnishings may have illegally avoided by falsely describing other furniture in the past or regarding furniture in shipments arriving after May 2013.

---

[10] For the purpose of its calculations, University Loft made an assumption that the total number of units listed as being in a container should be included in the AD Duty. While a container might have contained items not subject to AD Duty, University Loft understands that if goods subject to different duties are co-mingled in a container so that CBP cannot readily determine the quantity or value of each class of goods, all of the goods in a container are given the highest duty applicable to any of the goods. Also, University Loft used an estimated value of $69.00 for each unit regardless of the description as a "two drawer" or "four drawer" file.